UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES T. HERVEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-CV-01276-CAS-NCC |
| | ) | |
| RICH JENNINGS,[1] | ) | |
| | ) | |
| Respondent. | ) | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner Charles T. Hervey ("Petitioner") (Doc. 1). This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) (Doc. 9). After reviewing the case, the undersigned has determined that Petitioner is not entitled to relief. As a result, the undersigned will **RECOMMEND** that the Petition be **DENIED** and the matter **DISMISSED**.

I. BACKGROUND

On December 4, 2012, Petitioner pleaded guilty to child kidnapping (Count I), statutory sodomy in the first degree (Count II), enticement of a child (Count III), and endangering the welfare of a child (Count IV) (Doc. 12-1 at 15). On December 5, 2012, Petitioner pleaded guilty to one count of forcible sodomy in a second, unrelated case (Doc. 12-2 at 9). On February 7, 2013, the Circuit Court of St. Louis City sentenced Petitioner to 30 years each on Counts I, II, and III from the child kidnapping case and 30 years on the forcible sodomy count from the

---

[1] Petitioner is currently incarcerated at Potosi Correctional Center in Mineral Point, Missouri. *See* Doc. 13. Rich Jennings is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

second case (Doc. 12-3 at 29).  The court also sentenced Petitioner to 15 years on Count IV from the child kidnapping case (*Id*.).  The court ordered all sentences to run concurrently, with 30 years being the maximum prison sentence that Petitioner would serve (*Id*.).  At the time of sentencing, Petitioner was 40 years old (*Id*. at 24).  Petitioner would be required to serve 85 percent of his sentence and complete the Missouri Sexual Offenders Program before becoming eligible for parole (*Id*. at 25-26).

On April 8, 2013, Petitioner timely filed a *pro se* motion for post-conviction relief (*Id*. at 58-59).  On August 21, 2014, with the assistance of counsel, Petitioner filed an amended motion for post-conviction relief (*Id*. at 57-71).  On December 10, 2014, the motion court, without holding an evidentiary hearing, denied Petitioner's amended motion (*Id*. at 72-76).  On October 8, 2015, with the assistance of counsel, Petitioner filed an appeal raising one ground for relief:

> (1) Ineffective assistance of counsel because plea counsel failed to advise Petitioner that, as a consequence of his guilty pleas to statutory and forcible sodomy, he would be subject to lifetime supervision with electronic monitoring.

(Doc. 12-4 at 19).  On March 15, 2016, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence on direct appeal (Doc. 12-7; *Hervey v. Missouri*, 491 S.W.3d 253 (Mo. App. E.D. 2016)).

On August 4, 2016, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody raising one ground for relief: (1) plea counsel was ineffective for failing to advise him that he would be subject to lifetime supervision with electronic monitoring as a consequence of pleading guilty to the crimes with which he was charged (Doc. 1).

## II.  DISCUSSION

"In the habeas setting, a federal court is bound by the AEDPA[2] to exercise only limited and deferential review of underlying state court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

Respondent concedes that Petitioner filed a timely petition and that his claim is not procedurally barred (Doc. 12 at 3).  The undersigned therefore considers, on the merits, Petitioner's sole claim of ineffective assistance of counsel.

In order to state a claim of ineffective assistance of plea counsel, Petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254.

3

performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. To overcome this presumption, a petitioner must prove that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 697. In the context of a guilty plea, a petitioner demonstrates ineffective assistance of counsel if, first, counsel's performance was deficient under the *Strickland* standard and, second, a "reasonable probability" exists that but for counsel's errors, petitioner would not have pleaded guilty and would have gone to trial. *Missouri v. Frye*, 566 U.S. 134, 140-41 (2012) (discussing *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985)). Federal habeas review of a *Strickland* claim is highly deferential because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable — a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted).

Petitioner asserts that plea counsel was ineffective for failing to advise him that he would be subject to lifetime supervision with electronic monitoring as a consequence of pleading guilty to the crimes with which he was charged (Doc. 1-1). Petitioner specifically argues that plea counsel's failure to notify him of these consequences directly conflicts with *Padilla v. Kentucky*, 559 U.S. 356 (2010) (*Id*. at 2). Petitioner asserts that *Padilla* "provides that reasonable counsel will advise his or her client of consequences that are severe, practically certain to occur, related to the criminal process, and easily ascertainable" (*Id*.). While Petitioner concedes that Missouri case law does not require plea counsel to inform criminal defendants of collateral consequences

4

(*id*. at 3, 8), and that "'Missouri case law has consistently held that parole matters are collateral consequences of guilty pleas'" (*id*. at 9), he argues that the distinction between direct and collateral consequences does not matter because electronic monitoring is a consequence that is severe, practically certain to occur here, related to the criminal process, and easily ascertainable (*See id*. at 10-16). Accordingly, Petitioner argues that had he been made aware of the lifetime electronic supervision requirement, he would not have pleaded guilty but, instead, insisted on going to trial (*Id.* at 3).

The motion court determined that Petitioner's claim lacked merit (Doc. 12-3 at 75). In so doing, the motion court distinguished *Padilla*, finding that *Padilla* was limited to the deportation setting (*Id*.). Specifically, the motion court reasoned, "Missouri courts have declined to expand *Padilla's* reasoning beyond the deportation context into parole matters or non-deportation consequences" (*Id*.) (citing *Simmons v. State*, 432 S.W.3d 306, 308-310 (Mo. App. E.D. 2014); *Burgess v. State*, 455 S.W.3d 21, 25 (Mo. App. E.D. 2014) (holding that lifetime supervision with electronic monitoring is a collateral consequence and that plea counsel is not required to advise their client of such consequence)).

The post-conviction appellate court similarly denied Petitioner's claim, finding that Petitioner's claim was unreasonable and refuted by the record, and that plea counsel had no duty to inform him of this collateral consequence to his plea (Doc. 12-7 at 9). The post-conviction appellate court reasoned that "[o]ur courts have determined that other significant consequences of guilty pleas in sex offense cases are collateral" (Doc. 12-7 at 8). For example, the post-conviction appellate court noted that both the registration requirement and a civil commitment under the Sexually Violent Predator statutes are collateral consequences of a guilty plea (*Id*.) (citing *Ramsey v. State*, 182 S.W.3d 655, 661 (Mo. App. E.D. 2005); *Morales v. State*, 104

5

S.W.3d 432, 437 (Mo. App. E.D. 2003)).  The post-conviction appellate court determined "as with registration, parole monitoring is non-punitive and regulatory, and therefore not a direct consequence of a guilty plea" (*Id.*).  Therefore, the post-conviction appellate court concluded, "[a]s a collateral consequence of his guilty plea, plea counsel was not obligated to inform [Petitioner] of it." (*Id.*).  The post-conviction court additionally found Petitioner not prejudiced by plea counsel's alleged error (*Id.*).  The post-conviction appellate court noted that Petitioner "pled blind to four charges that carried a maximum life sentence, which could have been entered against him consecutively, without eligibility for parole" (*Id.*).  The post-conviction appellate court also indicated that upon his release, Petitioner may be eligible to have the supervision requirement terminated.  Petitioner was 40 years old at the time of his pleading; he was sentenced to a total of 30 years; and pursuant to Missouri Revised Statute § 217.735.5, lifetime supervision may be terminated after the offender reaches 65 years of age (*Id.* at 9).

As a threshold matter, the Court finds that the Missouri Courts reasonably addressed the U.S. Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010).  In *Padilla,* the underlying Kentucky state court rejected petitioner's ineffectiveness claim on the ground that the advice he sought about the risk of deportation concerned only collateral matters and such collateral consequences are outside the scope of representation required by the Sixth Amendment.  *Id.* at 364-65.  Finding that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," the U.S. Supreme Court noted, in dicta, "[w]e . . . have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonably professional assistance' required under Strickland." *Id.* at 364, 366.  The U.S. Supreme Court, though, declined to consider "[w]hether that distinction is appropriate" in light of "the unique nature of deportation."

6

*Id.* at 365. Similar to the Kentucky state court in *Padilla*, the Missouri Courts relied on Missouri case law and applied the "collateral versus direct" distinction to the present case. However, the Court finds this not unreasonable as a matter of law.

First, to the extent Petitioner asserts that the U.S. Supreme Court rejected the direct and collateral consequences distinction, such dicta is not "clearly established federal law" for purposes of section 2254. "Section 2254(d)(1) provides a remedy for instances in which a State court unreasonably *applies* [Supreme Court] precedent; it does not require courts to *extend* that precedent or license federal courts to treat failure to do so as error." *White v. Woodall*, 572 U.S. 698, 426 (2014) (emphasis in original). Moreover,

> …clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal citations and quotation marks omitted).

Second, *Padilla*'s limited holding is inapplicable to cases such as this one. The U.S. Supreme Court's specifically addressed an attorney's duty to advise her client about the risk of deportation, a consequence which the Court deemed particularly unique. *Padilla*, 559 U.S. at 366 (deportation is "uniquely difficult to classify as either a direct or collateral consequence," and therefore, the "collateral versus direct distinction" is "ill suited to evaluating a *Strickland* claim concerning the specific risk of deportation"). When the *Padilla* Court rejected the applicability of the collateral versus direct distinction in cases involving deportation, the Court

7

did not invite unreserved abandonment of the distinction in other types of cases, including this case. *See id*. at 372 (citing *Strickland*, 466 U.S. at 689) (noting that "[i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains" considering professional norms have generally imposed an obligation to provide advise regarding the deportation consequences of a client's plea. "We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty"). While the Eighth Circuit Court of Appeals has not directly addressed this issue, several other circuit courts have declined to extend *Padilla*'s reasoning beyond deportation to any additional collateral consequences. "*Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only." *United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) (holding that counsel was not ineffective for failing to advise their client about potential sentencing enhancements for future crimes). *See also United States v. Crain*, 877 F.3d 637, 648-49 (5th Cir. 2017) (rejecting the argument that a lifetime computer ban is so "unique" that, as with deportation, defense counsel is obligated to warn their client of that potential consequence); *Parrino v. United States*, 655 Fed. App'x 339, 403 (6th Cir. 2016) (finding that counsel was not ineffective for failing to advise the petitioner of a five-year exclusion from federal healthcare programs); *Santiago v. Leclair*, 558 Fed. App'x 1, 3-4 (2d Cir. 2014) (summary order) (noting that "certain possible consequences of a guilty plea are collateral rather than direct and need not be explained to the defendant in order to ensure the plea is voluntary, and an example of such a collateral consequence is parole eligibility or revocation") (internal quotations omitted).

Finally, as the *Padilla* Court warned, "we must be especially careful about recognizing new grounds for attacking the validity of guilty pleas." *Padilla*, 559 U.S. at 372. A successful

collateral challenge to a guilty plea does not constitute a prison release.  The result of a successful collateral challenge is the defendant's opportunity to withdraw his plea and proceed to trial, which could result in a *less favorable* outcome for the defendant by forfeiting any bargain that they obtained as a result of his plea.  *Id*. at 372-73.

Regardless, the Missouri Courts reasonably applied *Strickland*.  As a preliminary matter, it is unclear from the record that Petitioner was truly unaware of the lifetime monitoring.  Petitioner's indictment for the child kidnapping case[3] indicates that the counts are "subject to lifetime supervision" and, during his plea hearings, Petitioner acknowledged that he had sufficient time to discuss the charges with his attorney (*See* Doc. 12-3 at 17-18; Doc. 12-1 at 6; Doc. 12-2 at 5).  Regardless, Petitioner's guilty pleas in both the child kidnapping case and in the second sodomy case were made "voluntarily and intelligently with a full understanding of the charges, the range of punishment on each charge and the consequences of the guilty plea . . ." (Doc. 12-1 at 15; Doc. 12-2 at 9).  At both plea hearings, when Petitioner was asked, "Have you had enough time to discuss this case fully with [your attorney] including all possible defenses you might have at trial," Petitioner replied, "Yes, sir" (Doc. 12-1 at 10-11; Doc. 12-2 at 7).  Petitioner was asked this same question a second time and again responded in the affirmative (Doc. 12-1 at 11; Doc. 12-2 at 7).  Petitioner was also asked, "Has your attorney explained all your legal rights to you," "Has your attorney answered all your questions," and "Are you satisfied with his services," and Petitioner replied to each of these questions with, "Yes, sir" (Doc. 12-1 at 11; Doc. 12-2 at 7).  When asked, "Do you have any complaints with your attorney," Petitioner replied, "No, sir" (Doc. 12-1 at 11; Doc. 12-2 at 7).  All of these statements are demonstrative of adequate representation and adequate client satisfaction.  While the undersigned acknowledges that it is unclear from the record whether plea counsel explicitly

---

[3] His charging document for the second, sodomy case is not a part of the current record.

9

informed Petitioner of the possibility of electronic supervision, our deferential standards weigh strongly in favor of the attorney.  "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.

Even if plea counsel failed to inform Petitioner of the possibility of electronic supervision, the post-conviction appellate court properly found that Petitioner failed to establish that he suffered any prejudice as a result of his plea.  Petitioner was 40 years old at the time of his sentencing, and after serving the mandated 85 percent of his 30-year sentence, which would be 25.5 years, Petitioner would be over the age of 65.  As detailed by the post-conviction appellate court, Missouri Revised Statute § 217.735.5 "provides that the board may terminate lifetime supervision after the offender reaches 65 years of age" (Doc. 12-7 at 9).  Therefore, the lifetime supervision requirement may be terminated upon Petitioner's release at the age of 65.  As the post-conviction appellate court further detailed, Petitioner "pled blind to four charges that carried a maximum life sentence, which could have been entered consecutively, without eligibility for parole."  (Doc. 12-7 at 8).  This Court finds it implausible to believe that Petitioner would be willing to face the possibility of four consecutive life sentences, but that he would be unwilling to face the mere possibility of lifetime electronic supervision in his own home.  This Court cannot find a reasonable probability that, but for plea counsel's alleged error, Petitioner would have rejected the plea agreement and opted for a jury trial.  *Strickland*, 466 U.S. at 694 (holding that to establish prejudice, Petitioner must state "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  *See also Plunk v. Hobbs*, 766 F.3d 760, 769 (8th Cir. 2014) (holding that even if plea counsel had accurately advised the petitioner of plea consequences, the petitioner would not have rejected the

10

plea agreement and opted for a jury trial. Accordingly, the state court's credibility finding that the petitioner's "'self-serving, after-the fact statements'" were inadequate was not clearly erroneous).

Therefore, because the Missouri Courts reasonably applied *Strickland,* this Court finds Petitioner's claim without merit and will recommend that Petitioner's sole ground be denied.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not recommend a certificate of appealability issue. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and this case be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability should issue. 28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 25th day of June, 2019.

   /s/ Noelle C. Collins             <br>
NOELLE C. COLLINS<br>
UNITED STATES MAGISTRATE JUDGE

11